UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
VICTORIA BUTTO and LAKESHA HOUSER,
on behalf of themselves and all others similarly
situated,

                              Plaintiffs,

           -against-

COLLECTO INC., d/b/a EOS/CCA,

                        Defendant.
----------------------------------------------------------X

**MEMORANDUM OF DECISION AND ORDER**
10-cv-2906 (ADS)(AKT)

**APPEARANCES:**

**Lemberg & Associates, LLC**
*Attorneys for the plaintiffs*
1100 Summer Street
Stamford, CT 06905
    By:    Sergei Lemberg, Esq.,
               Stephen F. Taylor, Esq., of Counsel

**Zeldes, Needle & Cooper, P.C.**
*Attorneys for the defendant*
1000 Lafayette Blvd., Suite 500
Bridgeport, CT 06604
    By:    Jonathan D. Elliot, Esq., of Counsel

**SPATT, District Judge.**

In this putative class action, the defendant Collecto Inc., d/b/a EOS/CCA ("Collecto") seeks to compel the plaintiffs Victoria Butto and Lakesha Houser to arbitrate their present claims, pursuant to an agreement to which Collecto is not a signatory. For the reasons that follow, the Court denies Collecto's motion to compel arbitration.

# I. BACKGROUND

In 2007 and 2009, the plaintiffs Victoria Butto and Lakesha Houser entered into cell phone service contracts with, respectively, Verizon Wireless ("Verizon") and AT&T Mobility ("AT&T"). Both Butto and Houser then failed to pay their cell phone bills, and in response, Verizon and AT&T cancelled their service. After service termination, Butto's and Houser's accounts remained unpaid, and pursuant to standing collection agreements that Verizon and AT&T had with the defendant Collecto, Verizon and AT&T each requested Collecto to attempt to collect the overdue charges. Collecto complied, and on February 10, 2010 and February 11, 2010, Houser and Butto each respectively received a "Notice of Collection Placement" in the mail from the defendant Collecto. Each letter demanded payment of both "principal" and "Fees/Coll[ection] Costs", in the following amounts:

    Houser: demand for principal of $378.31 and collection costs of $68.27;

    Butto: demand for principal of $184.94 and collection costs of $33.29.

(Compl., Exs. A & B.)

In response to these letters, Butto and Houser commenced the present putative class action against Collecto on June 23, 2010. Butto and Houser do not contest the principal amounts that Collecto seeks to recover, but rather assert that Collecto's demand for collection costs was improper. The plaintiffs maintain that, at the time Collecto mailed its Notices of Collection Placement, Collecto had no valid basis for seeking to recover collection costs from the plaintiffs and that doing so (1) violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"); (2) violated

New York's consumer protection statute, NYGBL § 349; and (3) constituted common law fraud.

Collecto answered the plaintiffs' complaint, and then, on February 22, 2011, moved to compel Butto and Houser to arbitrate their claims. In moving to compel arbitration, Collecto relies on arbitration agreements contained in the service contracts that Butto and Houser each entered into when they purchased cell phone services from Verizon and AT&T. Although Collecto is not a party to either of these service contracts, Collecto maintains that the arbitration provisions in both contracts are sufficiently broad so as to bind Butto and Houser to arbitration not just with Verizon and AT&T, but also with Collecto. The plaintiffs dispute this conclusion.

## II. DISCUSSION

**A. Legal Standard on a Motion to Compel Arbitration**

The Federal Arbitration Act ("FAA") provides that "a written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable . . . ." 9 U.S.C. § 2. The FAA was "enacted to replace judicial indisposition to arbitration," Hall St. Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 581, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008), and is an expression of "a strong federal policy favoring arbitration as an alternative means of dispute resolution." Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp., 246 F.3d 219, 226 (2d Cir. 2001). The Second Circuit has said that "it is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy we have often and emphatically applied." Arciniaga v. Gen. Motors Corp., 460 F.3d 231, 234 (2d Cir. 2006) (internal

quotation marks omitted).

Nevertheless, arbitration "is a matter of consent, not coercion." Ross v. Am. Exp. Co., 547 F.3d 137, 143 (2d Cir. 2008) (citing Volt Info. Scis. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 479, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989)). As such, "'a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit,'" Republic of Ecuador v. Chevron Corp., 638 F.3d 384, 392 (2d Cir. 2011) (citing AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986)). Thus, "[w]hile the FAA expresses a strong federal policy in favor of arbitration, the purpose of Congress in enacting the FAA 'was to make arbitration agreements as enforceable as other contracts, *but not more so.*'" Ross, 547 F.3d at 142–43 (citing JLM Indus., Inc v. Stolt-Nielsen SA, 387 F.3d 163, 171 (2d Cir. 2004)) (emphasis in original). Consistent with these principles, "[t]he party seeking to compel arbitration has the burden of demonstrating by a preponderance of the evidence the existence of an agreement to arbitrate." Tellium, Inc. v. Corning Inc., No. 03-cv-8487, 2004 WL 307238, *5 (S.D.N.Y. 2004) (citing Progressive Cas. v. C.A. Reaseguradora Nacional, 991 F.2d 42, 46 (2d Cir. 1993)).

**B. As to Collecto's Ability to Enforce the Arbitration Agreements**

Here, Collecto faces the burden of showing that it may enforce the arbitration provisions set forth in the plaintiffs' service agreements, in spite of the fact that Collecto is not a party to those contracts. In Collecto's favor is the fact that, just as a non-signatory to an ordinary contract may at times be deemed a party to that contract, so too may a non-signatory to an arbitration agreement be at times deemed a party to

4

that arbitration agreement.  See, e.g., Smith/Enron Cogeneration Ltd. Partnership, Inc. v. Smith Cogeneration International, Inc., 198 F.3d 88, 97 (2d Cir. 1999) ("In this circuit, we have repeatedly found that non-signatories to an arbitration agreement may nevertheless be bound according to ordinary principles of contract and agency") (internal quotations omitted).  In Smith/Enron, the Second Circuit noted that the bases for enforcing an arbitration agreement with regard to a non-signatory include the principles of "(1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and (5) estoppel."  Id. (internal quotations omitted).

Here, Collecto relies on two of these principles in attempting to enforce the plaintiffs' arbitration agreements: namely, agency and estoppel.  However, as the Court's analysis of estoppel ultimately includes a full analysis of agency, the Court need focus only on the former.

The Second Circuit has outlined the basis by which a non-signatory to an arbitration agreement may estop a signatory from opposing arbitration.  In one of the central cases on the issue, JLM Indus., Inc. v. Stolt-Nielsen S.A., the Second Circuit stated:

> Our cases have recognized that under principles of estoppel, a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute where a careful review of "the relationship among the parties, the contracts they signed . . . , and the issues that had arisen among them discloses that 'the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.'" Choctaw Generation Ltd. P'ship v.American Home Assurance Co., 271 F.3d 403, 406 (2d Cir.2001) (internal quotation marks and citation omitted).

387 F.3d at 176.

Interpreting this concept in Sokol Holdings, Inc. v. BMB Munai, Inc., 542 F.3d

5

354, 359 (2d Cir. 2008), the Second Circuit explained that JLM Industries should be understood to require a non-signatory seeking to compel arbitration to make a two-fold showing: *first*, that there are "intertwined factual issues" between the claims asserted and the agreement containing the arbitration clause; and *second*, that there is "a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement." Id.

Following Sokol, the Second Circuit then expanded on the second prong of this two-part test, explaining that "this Court's cases which have applied estoppel against a party seeking to avoid arbitration have tended to share a common feature in that the non-signatory party asserting estoppel has had some sort of *corporate* relationship to a signatory party; that is, this Court has applied estoppel in cases involving subsidiaries, affiliates, agents, and other related business entities." Ross, 547 F.3d at 144 (emphasis in original). The Second Circuit then noted that these principles are, of course, only guideposts, and that "'the estoppel inquiry is fact-specific.'" Id. (quoting JLM Industries, 387 F.3d at 178).

In applying these rules to this case, the Court begins with the text of the services agreements that Butto and Houser entered into. First, the relevant language in the contract between Butto and Verizon provides:

> We ["we" is not formally defined, but is understood to mean Verizon Wireless and the customer] each agree to settle disputes (except certain small claims) only by arbitration. . . . Any controversy or claim arising out of or relating to this agreement . . . , or any product or service provided under or in connection with this agreement . . . , will be

6

settled by one or more neutral arbitrators before the American Arbitration Association.

(Dumais Aff., Ex. A at 12 (paragraphing and emphasis omitted).) Collecto is nowhere mentioned in the agreement, and the contract further provides that:

[t]his agreement isn't for the benefit of any third party except our parents, affiliates, subsidiaries, agents, and predecessors and successors in interest.

(Id. at 13.) Finally, the agreement states that:

we may also charge you for any collection agency fees that we are charged by a collection agency we use to collect from you if it is permitted by the law of the state where you have your billing address when we first send your account to a collection agency.

(Id. at 10.)

Second, the relevant language in the contract between Houser and AT&T reads:

AT&T and you agree to arbitrate **all disputes and claims** between us. This agreement to arbitrate is intended to be broadly inter-preted. It includes, but is not limited to:

- Claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory . . . .

(Nellickunnel Aff., Ex. A at 9 (emphasis and paragraphing in original).) The AT&T agreement then formally defines "AT&T," "you," and "us" to:

include our respective subsidiaries, affiliates, agents, employees, predecessors in interest, successors, and assigns, as well as all authorized or unauthorized users or beneficiaries of services or Devices under this or prior Agreements between us.

(Id.) The contract makes no mention of Collecto.

In the Court's view, the arbitration provisions in both agreements are broadly drafted, and would apply to most, if not all, legal disputes between (1) Butto and

7

Verizon, and (2) Houser and AT&T.  In addition, while Collecto is not mentioned in either agreement, the validity of the collection fees that Collecto attempted to levy on both plaintiffs will likely implicate those service agreements.  This is particularly true with respect to the Verizon agreement, as that contract expressly mentions Verizon's right to recover collection fees.  Thus, the plaintiffs' claims against Collecto are almost certainly "intertwined" with the service agreements, and as such, the first prong of the two-part test is satisfied.

Nevertheless, the Court finds that Collecto has not satisfied the second part of the test, and thus ultimately cannot enforce the arbitration agreement.  That is, Collecto has not shown that there exists a relationship between it and either AT&T or Verizon that is sufficiently close so as to justify estopping the plaintiffs from opposing arbitration.

As the Second Circuit noted in Ross, the primary type of relationship that will satisfy the second prong of the test is a *corporate* relationship between the signatory and non-signatory—specifically, relationships of "subsidiaries, affiliates, agents, and other related business entities."  Ross, 547 F.3d at 144.  Here, there is neither an allegation nor evidence that Collecto is (1) a subsidiary of, (2) an affiliate of, or (3) otherwise related through corporate ownership to, Verizon or AT&T.  Thus, of the "corporate" relationships listed in Ross, this leaves *agency* as the only remaining relationship that Collecto could show to enforce the arbitration agreement here.  This is particularly apt, since exploration of whether Collecto was an agent of AT&T or Verizon is also relevant because both services agreements expressly extend to AT&T's and Verizon's "agents".  (See Nellickunnel Aff., Ex. A at 9; Dumais Aff., Ex. A at 13.)

8

As a general rule under New York law, "[a] principal-agent relationship may be established by evidence of the consent of one person to allow another to act on his or her behalf and subject to his or her control, and consent by the other so to act. The agent is a party who acts on behalf of the principal with the latter's express, implied, or apparent authority." Time Warner City Cable v. Adelphi University, 27 A.D.3d 551, 552, 813 N.Y.S.2d 114 (2d Dep't 2006) (internal quotations, citations, and alterations omitted).

Here, Collecto urges the Court to find that it is an agent of AT&T and Verizon because it was collecting overdue debts on behalf of those entities. However, aside from a general description by Collecto's attorneys of its role in this regard, Collecto initially provided no evidence showing that it had a principal-agent relationship with AT&T or Verizon. By contrast, in the plaintiffs' responsive pleading, Butto and Houser submitted the agreements between (1) Collecto and Verizon, and (2) Collecto and AT&T, by which Collecto agreed to collect overdue debts for these entities. Both contracts contain provisions *expressly disclaiming* that Collecto is an agent of either. In this regard, Collecto's agreement with Verizon provides:

> In providing any Services under this Agreement, [Collecto] is acting solely as an independent contractor and not as an agent of any other party. Persons furnished by [Collecto] shall be solely the employees or agents of [Collecto] and shall be under the sole and exclusive direction and control of [Collecto]. . . . Neither Party undertakes by this Agreement or otherwise to perform or discharge any liability or obligation of the other party, whether regulatory or contractual, or to assume any responsibility whatsoever for the conduct of the business or operations of the other Party. Nothing contained in this Agreement is intended to give rise to a partnership or joint venture between the Parties or to impose upon the Parties any of the duties or responsibilities of partners or joint venturers.

9

(Taylor Aff., Ex. 1 at 24–25.)  Similarly, Collecto's agreement with AT&T provides:

4.6 Independent Contractor

[Collecto] hereby represents and warrants to AT&T that:

a. [Collecto] is engaged in an independent business and will perform all obligations under this Agreement as an independent contractor and not as the agent or employee of AT&T; . . .

c. [Collecto] has and retains the right to exercise full control of and supervision over the performance of the Services and full control over the employment, direction, assignment, compensation, and discharge of all personnel performing the Services; . . . .

(Id., Ex. 2 at 32.)

Given Collecto's express disavowal of an agency relationship with either wireless provider—including an express disavowal of the wireless providers' control over Collecto's operations—it is difficult to find that Collecto was an agent of either AT&T or Verizon.  Collecto nevertheless asserts in its reply brief that the practical functioning of Collecto's relationship with AT&T and Verizon supports finding an agency relationship.  However, the only evidence that Collecto provides in this regard are other provisions of Collecto's agreements with the wireless providers—none of which demonstrate that the wireless providers exercised control over Collecto's daily operations.

In the Court's view, the disavowal of both agency and control in the collection agreements nullifies Collecto's assertion that these agreements could form the basis for finding that an agency relationship existed.  Compare Morante v. American General Financial Center, 157 F.3d 1006, 1009–10 (5th Cir. 1998) (affirming a jury finding that a collection agency was an agent of a creditor under Texas law, but reaching this

conclusion based on the extensive control that the creditor exercised over the collection agency's day to day activities). The Court therefore concludes that Collecto has failed to show that it was an agent of Verizon or AT&T.

Even so, Collecto contends that it may satisfy the second prong of the test by showing that it had a *non*-corporate, but close, relationship with AT&T and Verizon. Despite the Second Circuit's language in Ross, Collecto's assertion is not wholly without basis. That is, the Second Circuit has intimated that the requisite close relationship for enforcing an arbitration agreement may be satisfied when the plaintiff alleges that two persons *without* a corporate relationship acted in concert. See, e.g., Denny v. BDO Seidman, L.L.P., 412 F.3d 58, 70 (2d Cir. 2005) ("Having alleged in this RICO action that the Deutsche Bank and BDO defendants acted in concert to defraud plaintiffs, . . . plaintiffs cannot now escape the consequences of those allegations by arguing that the Deutsche Bank and BDO defendants lack the requisite close relationship [for non-signatory Deutsche Bank to enforce an arbitration agreement signed by the BDO defendants]").

Here, however, the plaintiffs have made no allegation that Collecto acted in concert with Verizon and AT&T in seeking improper collection fees. To the contrary, the plaintiffs allege that Collecto sought these fees without valid authorization from Verizon and AT&T. Thus, this contention also cannot form the basis for enforcing the arbitration agreement.

In similar fashion, the Court does not find the cases that the defendant relies on from outside the Second Circuit to be binding or applicable to the present facts. See, e.g., Sherer v. Green Tree Servicing LLC, 548 F.3d 379 (5th Cir. 2008) (enforcing an

arbitration agreement that was more broadly drawn than the arbitration clause in the present case); Blinco v. Green Tree Servicing LLC, 400 F.3d 1308 (11th Cir. 2005) (same); Liedtke v. Frank, 437 F. Supp. 2d 696 (N.D. Ohio 2006) (allowing a non-signatory debt collector to enforce an arbitration clause, where the plaintiff asserted concerted misconduct by the signatory to the arbitration agreement and the debt collector); Tickanen v. Harris & Harris Ltd., 461 F. Supp. 2d 863, 870 (E.D. Wis. 2006) (permitting a non-signatory to enforce an arbitration agreement, but applying a standard inconsistent with the rule articulated by the Second Circuit).

Ultimately, the Court agrees with United States District Judge Janet C. Hall, who recently decided a strikingly similar matter in in Lucy v. Bay Area Credit Svc LLC, No. 10-cv-1024, --- F. Supp. 2d ----, 2011 WL 2006358 (D. Conn. May 23, 2011). In that case, a collection agency attempted to enforce an arbitration clause that, as here, appeared in the plaintiff's wireless services contract with AT&T. Also, as in this case, the collection agency had entered into a contract with AT&T that disclaimed the collection agency's role as agent for AT&T, using language that was identical to the language in the agreement between Collecto and AT&T. Distinguishing a 2006 decision from the Southern District of New York, Fedotov v. Peter T. Roach & Assocs., P.C., No. 03-cv-8823, 2006 WL 692002 (S.D.N.Y. Mar. 16, 2006), Judge Hall found that the agreement between the collection agency and AT&T was irreconcilable with a finding that the collection agency was AT&T's agent. Judge Hall therefore found that there was no basis to permit the collection agency to enforce the arbitration agreement.

The Court finds Judge Hall's reasoning persuasive with regard to Collecto's relationship with both AT&T and Verizon. Although the FAA strongly favors

arbitration, the applicable rule recognized in this case—that a party cannot be forced to arbitrate without agreeing to do so—must succeed. The plaintiffs never contracted to arbitrate with Collecto, and the Court finds no basis for estopping the plaintiffs from asserting this established rule. The Court thus finds that Collecto has failed to meet its burden, and denies Collecto's motion to compel arbitration.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the defendant Collecto's motion to compel arbitration is denied.

**SO ORDERED.**

Dated: Central Islip, New York
August 15, 2011

                                                           */s/ Arthur D. Spatt*
                                                            ARTHUR D. SPATT
                                                    United States District Judge