UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
VICTORIA BUTTO and LAKESHA HOUSER,
on behalf of themselves and all others similarly
situated,

                                  Plaintiffs,

                -against-

COLLECTO INC., d/b/a EOS/CCA,

                               Defendant.
----------------------------------------------------------X

**MEMORANDUM OF DECISION AND ORDER**
10-cv-2906 (ADS)(AKT)

**APPEARANCES:**

**Lemberg & Associates, LLC**
*Attorneys for the Plaintiffs*
1100 Summer Street
Stamford, CT 06905
        By:    Sergei Lemberg, Esq.,
                 Stephen F. Taylor, Esq., of Counsel

**Zeldes, Needle & Cooper, P.C.**
*Attorneys for the Defendant*
1000 Lafayette Blvd., Suite 500
Bridgeport, CT 06604
        By:    Jonathan D. Elliot, Esq., of Counsel

**SPATT, District Judge.**

        In this putative class action, the Defendant Collecto Inc., d/b/a EOS/CCA ("Collecto") seeks reconsideration of the Court's previous denial of its motion to compel the Plaintiffs Victoria Butto and Lakesha Houser to arbitrate their present claims, pursuant to an agreement to which Collecto is not a signatory. For the reasons that follow, the Court denies Collecto's motion for reconsideration and to compel arbitration.

# I. BACKGROUND

In 2007 and 2009, the Plaintiffs Victoria Butto and Lakesha Houser entered into cell phone service contracts with, respectively, Verizon Wireless ("Verizon") and AT&T Mobility ("AT&T") (collectively, the "wireless providers"). Both Butto and Houser then failed to pay their cell phone bills, and in response, Verizon and AT&T cancelled their service. After the service termination, Butto's and Houser's accounts remained unpaid, and, pursuant to standing collection agreements that Verizon and AT&T had with the Defendant Collecto, Verizon and AT&T each requested Collecto to attempt to collect the unpaid charges. Collecto complied, and on February 10, 2010 and February 11, 2010, Butto and Houser each respectively received a "Notice of Collection Placement" in the mail from the Defendant Collecto. Each letter demanded payment of both "principal" and "Fees/Coll[ection] Costs", in the following amounts:

Butto: demand for principal of $184.94 and collection costs of $33.29;

Houser: demand for principal of $378.31 and collection costs of $68.27.

(Compl., Exs. A & B.)

In response to these letters, Butto and Houser commenced the present putative class action against Collecto on June 23, 2010. Butto and Houser do not contest the principal amounts that Collecto seeks to recover, but rather assert that Collecto's demand for collection costs was improper. The Plaintiffs maintain that, at the time Collecto mailed its Notices of Collection Placement, Collecto had no valid basis for seeking to recover collection costs from the Plaintiffs and that doing so (1) violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"); (2) violated

2

New York's consumer protection statute, New York General Business Law ("NYGBL") § 349; and (3) constituted common law fraud.

Collecto answered the Plaintiffs' complaint, and then, on February 22, 2011, moved to compel Butto and Houser to arbitrate their claims. In moving to compel arbitration, Collecto relied on arbitration agreements contained in the service contracts that Butto and Houser each entered into when they purchased cell phone services from Verizon and AT&T. Although Collecto is not a party to either of these service contracts, Collecto maintained that the arbitration provisions in both contracts are sufficiently broad so as to bind Butto and Houser to arbitration not just with Verizon and AT&T, but also with Collecto. The Plaintiffs dispute this conclusion.

On August 15, 2011, this Court entered a Memorandum of Decision and Order which determined that although the Defendant had demonstrated that there were intertwined factual issues between the claims asserted and the agreements containing the arbitration clauses — the first requisite showing — Collecto could not make the second necessary showing — namely, that there was a relationship among the parties of a nature that justified a conclusion that the party that agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary who is not a party to the arbitration agreement. See Butto v. Collecto Inc., 802 F. Supp. 2d 443, 450 (E.D.N.Y. 2011) (Spatt, J.) ("Butto I"). Collecto now moves for reconsideration of that decision.

## II. DISCUSSION

**A.  Legal Standard on a Motion for Reconsideration**

A motion for reconsideration in the Eastern District of New York is governed by Local Rule 6.3. "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotation marks omitted).

Of importance, a motion for reconsideration is not an opportunity for litigants to reargue their previous positions or present new or alternative theories that they failed to set forth in connection with the underlying motion. See Trans–Pro Logistic Inc. v. Coby Elecs. Corp., No. 05 Civ. 1759, 2010 WL 4065603, at *1 (E.D.N.Y. Oct. 15, 2010) (citing Ferrand v. Credit Lyonnais, 292 F. Supp. 2d 518, 520 (S.D.N.Y. 2003)); see also Zdanok v. Glidden Co., Durkee Famous Foods Div., 327 F.2d 944, 953 (2d Cir. 1964) ("[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again."). Indeed, Rule 6.3 should be "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have already been considered fully by the court" and is considered an "extraordinary remedy to be employed sparingly in the interests of

finality and conservation of scarce judicial resources." Trans–Pro Logistic Inc., 2010 WL 4065603 at *1 (internal quotation marks omitted).

Ultimately, the decision as to whether to grant a motion for reconsideration rests within the sound discretion of the district court. Kapsis v. Bloom, No. 08 Civ. 3092, 2009 WL 414001, at *1 (E .D.N.Y. Feb. 17, 2009). As set forth below, the Court finds that Collecto has failed to show that it is entitled to this "extraordinary remedy".

**B. Legal Standard on a Motion to Compel Arbitration**

The Federal Arbitration Act ("FAA") provides that "a written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable . . . ." 9 U.S.C. § 2. The FAA was "enacted to replace judicial indisposition to arbitration," Hall St. Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 581, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008), and is an expression of "a strong federal policy favoring arbitration as an alternative means of dispute resolution." Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp., 246 F.3d 219, 226 (2d Cir. 2001). The Second Circuit has said that "it is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy we have often and emphatically applied." Arciniaga v. Gen. Motors Corp., 460 F.3d 231, 234 (2d Cir. 2006) (internal quotation marks omitted).

Nevertheless, arbitration "is a matter of consent, not coercion." Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp., ––U.S. ––, ––, 130 S. Ct. 1758, 1773, 176 L. Ed. 2d 605 (2010) (internal quotation marks omitted). As such, "'a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit.'"

5

Republic of Ecuador v. Chevron Corp., 638 F.3d 384, 392 (2d Cir. 2011) (citing AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986)). Thus, "[w]hile the FAA expresses a strong federal policy in favor of arbitration, the purpose of Congress in enacting the FAA 'was to make arbitration agreements as enforceable as other contracts, *but not more so.*'" Ross v. Am. Exp. Co., 547 F.3d 137, 142–43 (2d Cir. 2008) (citing JLM Indus., Inc v. Stolt-Nielsen SA, 387 F.3d 163, 171 (2d Cir. 2004)) (emphasis in original). Consistent with these principles, "[t]he party seeking to compel arbitration has the burden of demonstrating by a preponderance of the evidence the existence of an agreement to arbitrate." Tellium, Inc. v. Corning Inc., No. 03 Civ. 8487, 2004 WL 307238, *5 (S.D.N.Y. Feb. 13, 2004) (citing Progressive Cas. v. C.A. Reaseguradora Nacional, 991 F.2d 42, 46 (2d Cir. 1993)).

The Second Circuit has "recognized a number of common law principles of contract law that may allow non-signatories to enforce an arbitration agreement, including equitable estoppel," as well as "the common law principles of incorporation by reference, assumption, agency, and veil-piercing/alter ego". Ross, 547 F.3d at 143 & 143 n.3 (2d Cir. 2008). As of 2008, the Second Circuit noted that it remained an open question in this circuit that when a non-signatory moves to compel arbitration with a signatory whether the non-signatory may proceed upon a theory other than estoppel. Id.

**C. As to Collecto's Motion for Reconsideration**

The basis for the present motion for reconsideration concerns the Court's previous finding that Collecto did not demonstrate that there exists a relationship

6

between itself and either AT&T or Verizon that is sufficiently close so as to justify estopping the Plaintiffs from opposing arbitration. Before the Court reconsiders the merits of this question in addressing Collecto's arguments, the Court notes that it is not the case "that whenever a relationship of any kind may be found among the parties to a dispute and their dispute deals with the subject matter of an arbitration contract made by one of them, that party will be estopped from refusing to arbitrate." Ragone v. Atl. Video at Manhattan Ctr., 595 F.3d 115, 127 (2d Cir. 2010). "[I]n addition to the 'intertwined' factual issues, there must be a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement." Id.

### 1. Whether There is an Agency Relationship Between Collecto and the Wireless Providers

In Butto I, this Court found that an agency relationship did not exist between Collecto and the wireless providers so as to justify estopping the Plaintiffs from opposing arbitration. This determination was based upon the fact that the agreements between (1) Collecto and Verizon, and (2) Collecto and AT&T, both contained provisions *expressly disclaiming* that Collecto is an agent of either. Moreover, the Court found that neither the practical functioning of the relationship between Collecto and the wireless providers nor any other provisions of their agreements demonstrated that the wireless providers exercised control over Collecto's daily operations so as to support a finding of an agency relationship.

7

In the present motion for reconsideration, Collecto argues that the decision in Butto I "overlooked the fact that the Collecto Agreements establish that the Wireless Providers exercise considerable control over the collection process and, in particular the amounts, including collection charges, sought to be collected through the collection letters, and the disposition of any fees collected." (Def. Motion at 4-5.) In order to support this assertion, Collecto points to other provisions in its agreements with the wireless providers.

As an initial matter, the Court previously found in Butto I that as to "other provisions of Collecto's agreements with the wireless providers — none . . . demonstrate that the wireless providers exercised control over Collecto's daily operations." 802 F. Supp. 2d at 449. Thus, the agreements are not new evidence which the Court previously overlooked. However, in order to be certain that there was no clear error and to prevent manifest injustice, the Court will nevertheless consider Collecto's arguments in this regard.

First, the Defendant points out that Verizon's agreement with Collecto provides that Collecto must "[p]rovide to Verizon for its review all correspondence, telegrams, and other communications, that it intends to utilize with respect to the collection of debts owing to Verizon . . ." (Def. Motion at 5.) However, this right to review does not necessitate a finding of agency. See In re FedEx Ground Package Sys., Inc., 734 F. Supp. 2d 557, 592 (N.D. Ind. 2010) (finding that the existence of FedEx policies and procedures that managers are to consult when reviewing drivers' work, and FedEx's requirement that drivers comply with certain standards of conduct and obligations only "illustrates FedEx's concern with the results of the drivers' work, not their method in

8

performing the work"); Nuevo Mundo Holdings v. Pricewaterhouse Coopers LLP, No. 03 Civ. 0613, 2004 WL 112948, at *3-*6 (S.D.N.Y. Jan. 22, 2004) (rejecting the plaintiff's allegations of an agency relationship although there was "overall training and supervision of [the defendant's] affiliates and peer review meetings held to assure compliance with the accepted professional standards and ethical requirements of what each affiliate is doing."); Lowe v. Surpas Res. Corp., 253 F. Supp. 2d 1209, 1233 n.19 (D. Kan. 2003) (finding that a "[bank's] right to review collection efforts reflects its concern with the result of [debt collection agency's] work, not the method of collection and such authority does not indicate the type of control that would create an agency relationship . . ."); Cubby, Inc. v. CompuServe, Inc., 776 F. Supp. 135, 143 (S.D.N.Y. 1991) ("CompuServe's ultimate right under the contract to remove text from its system for noncompliance with its standards merely constitutes control over the result of CCI's independent work.  This level of control over the Journalism Forum is insufficient to rise to the level of an agency relationship.").

Moreover, the Plaintiffs note that Verizon's right to review "does not relieve Contractor from liability under applicable law resulting from its communications." (Pls.' Opp. at 3.)  Thus, the Court agrees with the Plaintiffs that because each party would nevertheless be liable for its own acts, this clause belies any contention that an agency relationship exists.

Second, the Defendant asserts that the agreements also acknowledge that Collecto is a "fiduciary of Verizon [or AT&T]" with respect to funds collected on the wireless providers' behalves.  However, this is also not indicative of an agency relationship.  Collecto's role of temporarily holding funds is similar to that of a bank, in

9

which such a relationship, standing alone, does not create an agency relationship. See Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat. Ass'n, 731 F.3d 112, 122 (2d Cir. 1984).

Finally, aside from the actual agreements between Collecto and the wireless providers, the Defendant avers generally that Verizon and AT&T dictated the actual collection costs at issue and thus it was not the unilateral action of Collecto trying to recoup its fees. Due to the fact that Collecto could not reject the creditor's claim to these additional charges, Collecto alleges that these amounts and charges, as with the underlying account balances, are totally within the control of the wireless providers. However, the Court previously considered and rejected this argument. In any event, the actual agreements themselves both contain provisions *expressly disclaiming* that Collecto is an agent of the wireless providers. The Defendant still has not come forward with evidence as to its alleged principal-agent relationship with AT&T or Verizon to demonstrate why this express disclaimer can be overlooked.

This Court did not previously find, and is not now finding, that Collecto is not an agent solely because it is a mere independent contractor. There is no doubt that an independent contractor may simultaneously be an agent. U.S. v. Thomas, 377 F.3d 232, 238 ("This argument is unavailing because the two terms are not mutually exclusive; an independent contractor may also be an agent."); See Restatement (Second) of Agency § 14N (1958) ("One who contracts to act on behalf of another and subject to the other's control except with respect to his physical conduct is an agent and also an independent contractor."). However, an agency relationship is "the fiduciary relation which results from the manifestation of consent by one person to another that

the other shall act on his behalf and subject to his control, and consent by the other so to act." United States v. Whiting Pools, Inc., 674 F.2d 144, 148 (2d Cir.1982) (quoting Restatement (Second) of Agency § 1 (1958)), aff'd, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). The Defendant has raised no new arguments that merit a different determination then the one previously made in Butto I.

### 2. Whether There is a Close Relationship Between Collecto and the Wireless Providers Because They Acted in Concert

In Butto I, this Court also considered Collecto's contention that it may satisfy the second prong of the test by showing that it had a non-corporate, but close, relationship with AT&T and Verizon. In Butto I, this Court stated:

> Collecto's assertion is not wholly without basis. That is, the Second Circuit has intimated that the requisite close relationship for enforcing an arbitration agreement may be satisfied when the plaintiff alleges that two persons *without* a corporate relationship acted in concert. See, e.g., Denney v. BDO Seidman, L.L.P., 412 F.3d 58, 70 (2d Cir. 2005) ("Having alleged in this RICO action that the Deutsche Bank and BDO defendants acted in concert to defraud plaintiffs, ... plaintiffs cannot now escape the consequences of those allegations by arguing that the Deutsche Bank and BDO defendants lack the requisite close relationship [for non-signatory Deutsche Bank to enforce an arbitration agreement signed by the BDO defendants]").

Butto I, 802 F. Supp. 2d at 449–50. However, this Court went on to find that the Plaintiffs made no allegation that Collecto acted in concert with the wireless providers in seeking improper collection fees. To the contrary, the Plaintiffs allege that Collecto sought these fees without valid authorization from Verizon and AT&T.

Collecto now argues that the Court's previous rationale was misplaced, in that Collecto sought these fees with explicit authorization from Verizon and AT&T. First, this Court's decision did not mean to imply that Collecto was collecting the fees

11

without Verizon's or AT&T's knowledge. Instead, the statement was intended to mean that the fees were unauthorized by the Plaintiffs' wireless agreements with Verizon and AT&T. In any event, even if the wireless providers expressly authorized the collection fees, the Court still does not find that Collecto has satisfied the second prong of the test by showing that it had a non-corporate, but close, relationship with AT&T and Verizon.

First, cases decided subsequent to this Court's decision in Butto I, as well as recent commentary, cast doubt on whether concerted misconduct may even be a sufficient basis for estoppel in this regard, despite the holding in Denney. While this Court previously found that the Second Circuit "intimated" in Denney that allegations of concerted misconduct might satisfy the second prong of the equitable estoppel test, it may have "since had a change of heart." Mark Rifkin and Michael Liskow, *Is Equitable Estoppel in Arbitration a Sinking Ship?*, N.Y.L.J., Dec. 12, 2011, at 1.

In Ross v. American Express Co., which was decided three years after Denney, the Second Circuit held that "mere allegations of collusion by the signatory plaintiff do not satisfy the second 'relationship' prong of the equitable estoppel test because 'arbitration is a matter of consent,' and a plaintiff does not consent to arbitrate with every entity who subverts their rights under the agreement containing the arbitration clause in concert with another signatory." Id. (quoting Ross v. Am. Exp. Co., 547 F.3d 137, 145 (2d Cir. 2008)). The Ross court explained that applying equitable estoppel on the basis of conspiracy allegations "is problematic because… 'under general principles of contract law' parties should not be compelled to arbitrate unless 'the totality of the evidence supports an objective intention to agree to arbitrate.'" Id. at 148 (quoting Sarhank Group v. Oracle Corp., 404 F.3d 657, 662 (2d Cir. 2005)).

12

Criticisms of this legal theory are expressed even in instances where a plaintiff makes specific allegations as to a conspiracy. For example, in Costco Wholesale Corp. v. AU Optronics Corp., Judge Susan Illston of the Northern District of California held that a defendant could not "bootstrap its way into arbitration based on nothing more than the concerted misconduct about which the plaintiff complained in the first instance." 2011 U.S. Dist. LEXIS 102958, at *27 (N.D. Cal. Sept. 9, 2011). Thus, even if the Plaintiffs in this case had made conspiracy allegations, which they do not, this would be insufficient to find estoppel. It is hard to see why a Court should compel arbitration only based only upon Collecto's now self-serving allegations of concerted misconduct.

Finally, this conclusion is particularly apt in light of the basic principle that arbitration is a matter of consent, not coercion. The Supreme Court stated in Stolt-Nielsen that "parties may specify *with whom* they choose to arbitrate their disputes. It falls to courts and arbitrators to give effect to these contractual limitations, and when doing so, courts and arbitrators must not lose sight of the purpose of the exercise: to give effect to the intent of the parties." Id. at 1774-75 (emphases in original) (internal citations omitted). See Ross, 547 F.3d at 146 ("[T]he further necessary circumstance of some relation between Amex and the plaintiffs sufficient to demonstrate that the plaintiffs intended to arbitrate this dispute with Amex is utterly lacking here."); Costco, 2011 U.S. Dist. LEXIS 102958, at *28 ("Further, the Court agrees with Costco that, given that the defendants belong to distinct corporate families, there has been no showing that Costco intended to arbitrate disputes with all defendants at the time it signed its vendor agreements.").

13

Notwithstanding Collecto's current arguments, the Court finds that there has been no showing that the Plaintiffs intended to arbitrate disputes with a collection company when they signed their agreement with their wireless providers. "[C]ontractually speaking, the plaintiffs do not know [Collecto] from Adam." Ross, 547 F.3d at 146.

### III. CONCLUSION

In sum, the Court agrees with the Plaintiffs that the Defendant here merely restated its original rejected arguments or notes its disagreement with the Court's previous analysis. Thus, Collecto has not met its burden in demonstrating that it is entitled to the extraordinary remedy of reconsideration.

On a final note, as part of the Defendant's motion for reconsideration, they sought to continue the stay of discovery pending the outcome of the present decision. In light of the fact that discovery has been effectively stayed since the filing of the motion for reconsideration, the Court deems this request as moot.

For the foregoing reasons, it is hereby

**ORDERED** that the Defendant Collecto's motion for reconsideration and to compel arbitration is denied.

**SO ORDERED.**

Dated: Central Islip, New York
February 23, 2012

                                                  ___/s/ Arthur D. Spatt_____
                                                     ARTHUR D. SPATT
                                            United States District Judge