**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
VICTORIA BUTTO and LAKESHA HOUSER,
on behalf of themselves and all others similarly
situated,

                              Plaintiffs,

                  -against-

COLLECTO INC., d/b/a EOS/CCA,

                      Defendant.
--------------------------------------------------------X

**MEMORANDUM OF**
**DECISION AND ORDER**
10-cv-2906 (ADS)(AKT)

**APPEARANCES:**

**Lemberg & Associates, LLC**
*Attorneys for the Plaintiffs*
1100 Summer Street
Stamford, CT 06905
        By:     Sergei Lemberg, Esq.,
                   Stephen F. Taylor, Esq., of Counsel

**Zeldes, Needle & Cooper, P.C.**
*Attorneys for the Defendant*
1000 Lafayette Blvd., Suite 500
Bridgeport, CT 06604
        By:     Jonathan D. Elliot, Esq., of Counsel

**SPATT, District Judge.**

        This is a putative class action brought against the Defendant Collecto Inc., d/b/a

EOS/CCA ("Collecto") for violations of the Fair Debt Collection Practices Act, 15 U.S.C. §

1692 *et seq.* (the "FDCPA").  Presently before the Court is a motion by the Plaintiff Victoria

Butto, on behalf of herself and all other similarly situated, for an order certifying this action as a

class action pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 23.  In addition, the

Plaintiff seeks an order appointing Victoria Butto as class representative and Lemberg and

Associates, LLC, as class counsel.  For the reasons set forth below, the Court adopts the Report

and Recommendation issued by United States Magistrate Judge A. Kathleen Tomlinson, which

recommended that the motion for class certification be granted in part and denied in part.

## I.    BACKGROUND

In 2007 and 2009, Victoria Butto (the "Plaintiff") entered into a cell phone service

contract with Verizon Wireless ("Verizon").  Butto then failed to pay her cell phone bills, and in

response, Verizon cancelled her service.  After the service termination, Butto's account remained

unpaid, and, pursuant to a standing collection agreement that Verizon had with the Defendant

Collecto, Verizon requested Collecto to attempt to collect the overdue charges.  Collecto

complied, and in February 2010, Butto received a "Notice of Collection Placement" in the mail

from the Defendant Collecto.  The letter demanded payment of both a "principal" amount of

$181.94, and "Fees/Coll[ection] Costs" in the amount of $33.29.

In response to this letter, Butto and another plaintiff, Lakesha Houser, commenced the

present putative class action against Collecto on June 23, 2010.  Butto and Houser do not contest

the principal amounts that Collecto seeks to recover, but rather assert that Collecto's demand for

collection costs was improper.  The Plaintiffs maintain that, at the time Collecto mailed its

Notices of Collection Placement, Collecto had no valid basis for seeking to recover collection

costs from the plaintiffs

On October 6, 2012, the Court referred this matter to United States Magistrate Judge A.

Kathleen Tomlinson for a recommendation as to whether (1) this case should be certified as a

class action pursuant to Fed. R. Civ. P. 23; (2) the Plaintiff Victoria Butto should be appointed as

class representative; and (3) whether Lemberg & Associates, LLC should be appointed as class

counsel.  On February 16, 2013, Judge Tomlinson issued a thorough Report and

Recommendation ("the Report"), recommending that the Plaintiff's motion for class certification be granted in part and denied in part.

First, Judge Tomlinson reviewed the two classes of consumers put forth by the Plaintiff, including the revised definition for Class B, which was proposed to include "[a]ll consumers in the State of New York from whom Defendant collected 'collection fees' on behalf of Verizon on Verizon Wireless accounts." (Pl.'s Reply at 4.) Judge Tomlinson found that because Plaintiff Butto never paid a collection fee, she could not be a member of Class B and as such, recommended that the Plaintiff's motion for class certification as to proposed Class B should be denied.

Next, Judge Tomlinson analyzed the Rule 23 requirements in connection with the Plaintiff's amended definition of Class A, namely: numerosity; commonality; typicality; and adequacy of representation.

With regard to numerosity, Judge Tomlinson reasoned that based upon the 18,949 collection letters sent to Verizon customers, common sense would dictate that a least some percentage of these were sent to Verizon Wireless customers as opposed to Verizon Business and Telecom customers. The latter customers could not recover under the FDCPA. She also found that despite the Defendant's argument that customers may have received collection letters with varying language, the Plaintiff's amendment to the Class A definition to include the language "[a]ll customers in the State of New York who were sent a collection letter by Defendant *substantially similar to the Letter sent to Plaintiff for a Verizon Wireless account*[,]" sufficiently alleviated that concern. For these reasons, Judge Tomlinson concluded that the Plaintiff established the first criterion of numerosity.

With regard to commonality and typicality, the Report rejected the argument by the Defendant that the need to separate consumer debts from commercial debts precluded certification.  Further, although the Defendant argued that commonality and typicality were not met because individualized inquires needed to be made into the particular agreements each potential class member had with Verizon, Judge Tomlinson found that based upon the sample customer agreements from 2006 through 2010 submitted by the Plaintiff, these agreements have largely identical language pertaining to collection fees.

In addition, the Defendant contended that class certification was not appropriate because there are particular defenses unique to Butto which preclude class certification, namely that the Plaintiff did not first seek relief under the FDCPA debt dispute procedure before filing an action with this Court.  Nevertheless, Judge Tomlinson found that because the Plaintiff was not attacking the accuracy of the bill standing alone, it would be unnecessary for her to engage in the debt dispute procedure as a prerequisite to filing a federal action.  Thus, the Report ultimately concluded that the class members' claims are typical of one another.

With regard to the adequacy of representation, Judge Tomlinson found that she could not identify any antagonism between the Plaintiff's claims and those of the proposed Class A, which would interfere with the Plaintiff's ability to act as class representative.  Judge Tomlinson also explored whether Lemberg & Associates, LLC should be appointed lead counsel and concluded that the firm would adequately represent the class.

Finally, in engaging in the relevant Rule 23(b) analysis, Judge Tomlinson determined that questions of law or fact predominated over the individual issues presented, and that a class action was superior to other methods for adjudicating this controversy.  In this regard, she rejected the Defendant's repeated arguments that individual questions concerning the nature of the debt as

personal or business, as well as other individualized issues, would preclude a finding that a class action here is a superior method for the "fair and efficient adjudication" of a suit potentially involving over 18,000 individuals with identical or nearly identical claims.

Therefore, in sum, Judge Tomlinson recommended that the Plaintiff's motion for class certification be denied with respect to Class B, but granted with respect to Class A, as reflected in the following amended definition:

> All consumers in the State of New York who were sent a collection letter by Defendant substantially similar to the Letter sent to Plaintiff for a Verizon Wireless account within one year prior to the filing of this action, and which was not returned as undeliverable, which letter included a collection fee for Verizon Wireless service which had not yet been incurred at the time the letter was sent.

## II.    DISCUSSION

### A.  Standard of Review

A court is required to make a de novo determination as to those portions of the Report and Recommendation to which objections were made.  28 U.S.C. § 636(b)(1)(C); Grassia v. Scully, 892 F.2d 16, 19 (2d Cir. 1989).  The phrase " de novo determination" in Section 636(b)(1) — as opposed to "de novo hearing" — was selected by Congress "to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations."  United States v. Raddatz, 447 U.S. 667, 676, 100 S. Ct. 2406, 65 L. Ed. 2d 424 (1980).  Section 636 does not require a court "to rehear the contested testimony in order to carry out the statutory command to make the required 'determination.'"  Id. at 674, 100 S. Ct. 2406.  Rather, in making such a determination, a court may in its discretion review the record and hear oral argument on the matter.  See Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters, 894 F.2d 36, 40 n.3 (2d Cir. 1990).

Furthermore, a court may in its sound discretion afford a degree of deference to the magistrate's Report and Recommendation.  See Raddatz, 447 U.S. at 676, 100 S. Ct. 2406, 65 L. Ed. 2d 424.

In a case where a party "makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." Pall Corp. v. Entegris, Inc., 249 F.R.D. 48, 51 (E.D.N.Y. 2008) (quoting Barratt v. Joie, No. 96 Civ. 324, 2002 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002)).  "Furthermore, even in a de novo review of a party's specific objections, the Court ordinarily will not consider 'arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance.'"  Fairfield Financial Mortg. Group, Inc. v. Luca, No. 06 Civ. 5962, 2011 WL 3625589, at *2 (E.D.N.Y. Aug. 16, 2011).

## B.  Collecto's Objections

On March 4, 2013, the Defendant filed several objections to Judge Tomlinson's Report and Recommendation.  The Defendant raises several arguments, including: (1) that the Report applied an improper standard in determining whether to certify the class; (2) that the Report erred analyzing the threshold requirement of a consumer debt; (3) that the Report erred in determining that an individualized defense does not warrant denial of class certification; (4) that the Report incorrectly concluded that the Plaintiff had met her burden of establishing her own adequacy as a class representative and that of proposed class counsel; and (5) that the Report's analysis under Rule 23(b)(3) is lacking.  The Court will address each contention in turn.

### 1.  As to Whether the Report Applied an Improper Standard

First, the Defendant argues that the Report failed to hold the Plaintiff to her proper burden of proof under Rule 23.  The Report stated the relevant standard, in part, as follows:

> In determining whether to certify a class, courts take a liberal rather than a restrictive approach.  See Caridad v. Metro-North

> Commuter RR, 191 F.3d 283, 291 (2d Cir. 1999) (finding that "the
> Second Circuit has directed district courts to apply Rule 23
> according to a liberal rather than a restrictive interpretation").
> Indeed, a motion for class certification is not an occasion for
> examination of the merits of the case.  See Eisen v. Carlisle and
> Jacquelin, 417 U.S. 156, 178 (1974) ("In determining the propriety
> of a class action, the question is not whether the plaintiff or
> plaintiffs have stated a cause of action or will prevail on the merits,
> but rather whether the requirements of Rule 23 are met.") (internal
> quotation marks omitted); In re IPO Sec. Litig., 471 F.3d 24, 41
> (2d Cir. 2006) (holding that it is improper for a court to assess "any
> aspect of the merits unrelated to a Rule 23 requirement").

(Report & Recommendation at 6–7).  Collecto asserts that this statement of the guiding

principles of Rule 23 is inaccurate because the current state of the law is that a class may only be

certified if after a *rigorous* analysis, the prerequisites of Rule 23(a) have been satisfied.  In this

regard, the Defendant contends that the party seeking clarification bears a "heavy burden" of

establishing that each of these prerequisites has been met.  In addition, the Defendant points out

that the Caridad decision cited in the Report has since been overruled, and that it is now

acceptable for courts to examine the merits when determining the propriety of class certification

when it is necessary to do so.

The Defendant is correct in that the Caridad decision has been expressly overruled by the

Second Circuit.  Nevertheless, the Report does not contain a legal error.  While Caridad was

overruled, the main principle that was subsequently rejected in that decision was not the

language cited to by Judge Tomlinson—that in determining whether to certify a class, courts take

a liberal rather than a restrictive approach—but an entirely discrete notion.  Previously under

Caridad, plaintiffs needed to only make "some showing" that certain perquisites of Rule 23 were

met.  However, in In re IPO Sec. Litig., 471 F.3d 24 (2d Cir. 2006), the Second Circuit

disavowed the "some showing" standard of Caridad.  In short, Caridad was overruled in that the

Second Circuit now expressly requires a definitive assessment of Rule 23 requirements.

Therefore, while the Caridad decision is no longer binding precedential authority, the legal principle utilized in the Report is not.  Indeed, many courts have implicitly harmonized the idea of a liberal approach and a rigorous analysis.  See, e.g., Massey v. On-Site Manager, Inc., 285 F.R.D. 239, 244 (E.D.N.Y. 2012) (noting that a court may not certify a putative class unless it has performed a "rigorous analysis" but that "[d]espite this Court's obligation to carefully analyze each prong of Rule 23 before granting class certification, '[t]he Second Circuit has emphasized that Rule 23 should be 'given liberal rather than restrictive construction' and has shown a 'general preference' for granting rather than denying class certification.") (internal citations omitted); see also Pagan v. Abbott Labs. Inc., 287 F.R.D. 139, 144 (E.D.N.Y. 2012) (Spatt, J.); Ramos v. SimplexGrinnell LP, 796 F. Supp. 2d 346, 353 (E.D.N.Y. 2011).

Next, the Defendant takes issue with the language in the Report that "a motion for class certification is not an occasion for examination of the merits of the case."  Collecto is correct that if a factual dispute arises concerning one of the Rule 23 requirements, the Court must resolve the dispute irrespective of whether it involves a merit issue.  Indeed, in In re IPO, in addition to overruling Caridad, the Second Circuit declined to follow the dictum in another prior decision, Heerwagen v. Clear Channel Commc'ns, 435 F.3d 219, 225 (2d Cir. 2006), which suggested that a district judge may not weigh conflicting evidence and determine the existence of a Rule 23 requirement just because that requirement is identical to an issue on the merits.  However, that does not mean that the relevant statement in the Report with respect to the merits is incorrect.  In fact, Judge Tomlinson cited to In re IPO in support of that legal proposition to further clarify that it is improper for a court to assess "any aspect of the merits *unrelated* to a Rule 23 requirement".  Thus, this Court has no reason to doubt that Judge Tomlinson understood that if any factual

disputes arose as to any of the requirement elements of Rule 23, such questions could be resolved at this early stage of the proceedings.

To be clear, "[t]he party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met." Myers v. Hertz Corp., 624 F.3d 537, 547 (2d Cir. 2010). As the Supreme Court recently observed:

> Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc . . . [S]ometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question, and [ ] certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied. Frequently that rigorous analysis will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped.

Wal–Mart Stores, Inc. v. Dukes, —— U.S. ——, ——, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374, 390 (2011) (citations and internal quotation marks omitted); see also Ohio Public Employees Retirement System v. Gen. Reinsurance Corp. (In re Am. Int'l Group Inc.), 689 F.3d 229, 237 (2d Cir. 2012); Oakley v. Verizon Comm'ns., Inc., No. 09 Civ. 9175(CM), 2012 WL 335657, at *12, 2012 U.S. Dist. LEXIS 12975, at *34 (S.D.N.Y. Feb. 1, 2012) (holding that while "[t]he certifying court should not make any factual findings or merits determinations that are not necessary to the Rule 23 analysis, . . . where merits issues cannot be avoided they must be addressed"). Thus, "the United States Supreme Court has made it clear that courts cannot certify classes where Rule 23 requirements are not met, and should not contort the requirements in order to certify." Oakley, 2012 WL 335657 at *12, 2012 U.S. Dist. LEXIS at *35.

In the Court's view, Judge Tomlinson did comply with this legal standard and engaged in a rigorous analysis with respect to each necessary element. The Report's examination of the

Rule 23 requirements utilized accurate statements of the law, as evidenced by the fact that when

assessing each element of the standard, Judge Tomlinson referred to the most recent class

certification cases, such as <u>Dukes</u>, --- U.S. ----, 131 S. Ct. 2541 (2011).  Moreover, after

reviewing the entire Report and its objections, the Court notes that whether viewing the motion

liberally or through a more rigorous lens, the Court would reach the same ultimate conclusion.

Therefore, the Court rejects the objection by the Defendant that the Plaintiff was not held

to the proper burden of proof or that the Report applied an incorrect legal standard.

### 2. As to Whether the Report Erred in Analyzing the Threshold Requirement of a Consumer Debt

Next, the Defendant argues that the Report and Recommendation erred in analyzing the

threshold requirement of a consumer debt.

A claim under the FDCPA must involve a consumer debt, meaning it applies to the

obligation of a consumer to pay money arising from a transaction for personal, family, or

household purposes.  <u>See</u> 15 U.S.C. § 1692(a).  Thus, in order to recover in the present case,

each class member would bear the burden of establishing that the debt they have with Verizon is

a consumer debt, as opposed to a non-consumer debt.  The Defendant contends that the standard

utilized by Judge Tomlinson was not "sufficiently rigorous" to determine that the Plaintiff met

her burden of establishing that the potential class members are "consumers" for purposes of the

FDCPA.

The Report stated that "common-sense suggests that at least some percentage of the

18,949 letters were sent to Verizon Wireless customers, and that potential class members likely

number in the thousands."  (R&R at 13.)  The Defendant argues that this assumption was not

based on any admissible evidence submitted by the Plaintiff.  Rather, it asserts that this finding

was based in part on language in the contract that requires Collecto to comply with the FDCPA

10

whenever it applies, but that this does not transform business debt to consumer debt.  In addition, the Defendant points out that the Report's determination also relied on the nomenclature used in the Plaintiff's proposed Class A definition—inserted for the first time in the Plaintiff's Reply Memorandum—that the Plaintiff seeks to represent only Verizon Wireless account holders, as opposed to Verizon Business or Verizon Telecom customers.

However, according to the Defendant, merely because an account is a Verizon Wireless account does not mean that it is consumer debt for purposes of the FDCPA.  It is the purpose for which the debt is incurred that is dispositive.  In short, the Defendant argues that the assumption that the proposed class is comprised of consumers is inconsistent with the rigorous analysis required by the Supreme Court.  Furthermore, the Defendant maintains that the threshold issue of a consumer debt weighs against commonality, typicality, and superiority.  In particular, it states that this case would require an individualized inquiry into each and every class member's debt to determine whether the underlying financial obligation is consumer debt for purposes of the FDCPA, which is a highly fact driven determination.

With regard to numerosity, as an initial matter, there is no requirement that the exact number of class members be known for class certification.  In re Med. X-Ray Film Antitrust Litig., No. CV-93-5904, 1997 WL 33320580, at *3 (E.D.N.Y. Dec. 26, 1997) (citing In re Nasdaq Market-Makers Antitrust Litig., 169 F.R.D. 493, 509 (S.D.N.Y. 1996)).  Judge Tomlinson undoubtedly made certain assumptions necessary to her finding, including that at least a significant portion of the 18,949 letters were sent to Verizon Wireless customers and concerned personal debt.  Nevertheless, "courts are empowered to 'make common sense assumptions to support a finding of numerosity.'"  Nicholson v. Williams, 205 F.R.D. 92, 98 (E.D.N.Y. 2001) (quoting German v. Fed. Home Loan Mort. Corp., 885 F. Supp. 537, 552

(S.D.N.Y. 1995)).  The Court finds that her common sense assumption here was logical and reasonable.  This assumption was particularly apt here where Collecto's agreement with Verizon with regard to Verizon Wireless accounts contained a provision in which Collecto was mandated to comply with the FDCPA, but this provision was not contained in language pertaining to Collecto's terms with regard to Verizon "Business" or "Telecom" accounts.

More importantly, the Defendant's argument for the denial of class certification because of the requirement of a personal debt for purposes of recovering under the FDCPA is without merit.  "Contrary to [the D]efendant['s] assertion, the need to determine the consumer nature of a debt does not automatically preclude class certification.  Instead, courts should examine the general nature of the debts and the ease of separating consumer from business debts finding class certification appropriate in a variety of circumstances." Berrios v. Sprint Corp., No. CV-97-0081(CPS), 1998 WL 199842, at *9 (E.D.N.Y. March 16, 1998).

In a similar FDCPA action, Selburg v. Virtuoso Sourcing Group, LLC, No. 1:11-cv-1458-RLY-MJD, 2012 WL 4514152 (S.D. Ind. 2012), Chief District Judge Richard L. Young explored the argument by the defendant that the class definition was not ascertainable because it required an inquiry as to whether an individual incurred a consumer debt (and thus within the scope of the FDCPA) or a non-consumer debt (and instead outside the FDCPA's scope).  Almost identical to the arguments by Collecto, in Selburg, the defendant alleged that the class was impermissible because it would require "individualized inquiries, or mini-trials" to determine whether the debt at issue was subject to the FDCPA.  There, the defendant merely submitted an affidavit from its CEO that included the conclusory statement that the company "generally [did] not know, and ha[d] no way of knowing, whether a particular individual's delinquent obligation was incurred primarily for personal, family, or household purposes."  However, Judge Young

found that while this went to the heart of separating consumer debt from non-consumer debt under the FDCPA, "no additional evidence ha[d] been provided for whether the proposed class criteria would produce false positives or anything documenting the kind of arduous individual inquiries that may be necessary.  If unsupported conclusory statements such as these were enough to defeat class certification, then FDCPA claims would rarely become class actions as anticipated in the statute."  Id. at *3.  The same holds true in this case.

Moreover, Judge Young noted, as several other courts have, that "the need to show that the transactions involved in a particular case are consumer transactions is inherent in every FDCPA class action.  If that need alone precluded certification, there would be no class actions under the FDCPA."  Wilkerson v. Bowman, 200 F.R.D. 605, 609 (N.D. Ill. 2001); see also Miller v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, L.L.C., 198 F.R.D. 503, 506 (N.D. Ill. 2001) ("If the need to show whether each loan transaction was a consumer rather than a commercial one barred a class action, there could be no FDCPA class actions, because only consumer loans come under FDCPA."); In re CBC Companies, Inc. Collection Letter Litig., 181 F.R.D. 380, 385 (N.D. Ill. 1998) (denying a motion to decertify in finding that if business versus personal debt ruined commonality then it would be impossible to bring a FDCPA class action if there were a chance a possible class member used a credit card for business purpose, which would be "contrary to the clear remedial goals of the FDCPA").  In this regard, the Court notes that the Defendant is unable to point to a single FDCPA class action case where the nature of the underlying debts at issue served to bar certification.

The Defendant asserts that it cannot be determined on an administrative basis by looking at the records of Collecto or Verizon whether a particular proposed class member's account is properly subject to the FDCPA.  However, it appears to the Court that the process of determining

13

whether a debt is a consumer debt would be "relatively straightforward." There is no reason to believe that the information could not be obtained from Verizon's own customers. For instance, in Ditty v. CheckRite, Ltd., No. 2:95-CV-430C, 1998 WL 663357, 1998 U.S. Dist. LEXIS 12940 (D. Utah Aug.13, 1998), the court stated that "the use of a personal check, as identified on the defendants' computer system, creates a rebuttal [sic] presumption that the debt was consumer in nature and is sufficient to make out plaintiffs' *prima facie* case. If the defendants wish to rebut that presumption in individual cases, they are free to do so." Id. at *2, 1998 U.S. Dist. LEXIS 12940, at *5-6 (citation omitted). Also, another court noted, "[w]hile the determination of whether each check was written for personal or business purposes may take some effort, the Court does not believe that the task would be extraordinarily difficult because the nature of the check, i.e., personal or business, should indicate the type of debt." Gradisher v. Check Enforcement Unit, Inc., 203 F.R.D. 271 (W.D. Mich. 2001). Furthermore, contrary to Collecto's assertions, "[s]uch issues of proof, should they arise, can be addressed 'in a manner which will not require the testimony of each and every' recipient of the [ ] letter." Talbott v. GC Servs. Ltd. P'ship, 191 F.R.D. 99, 106 (W.D. Va. 2000) (rejecting the argument that determination of the status of the debt as consumer debt predominated over common issues).

Further, even if Collecto cannot differentiate between consumer debt and non-consumer debt for the 18,949 collection letters it has sent out, as in Selburg, "this fact alone does not preclude class treatment." Selburg, 2012 WL 4514152, at *3. As the Plaintiff suggested, class members may be asked a single question to determine whether they are entitled to relief. See Wilkerson, 200 F.R.D. at 610 (finding the "fact that class certification . . . may require the parties to ask the individual class members one question does not automatically establish that individual issues 'predominate'" (citing Wells v. McDonough, 188 F.R.D. 277, 279 (N.D. Ill. 1999))). The

Court does not find it particularly arduous to ask potential class members the simple question of whether the individual's debt at issue qualifies as a consumer debt.  See Haynes v. Logan Furniture Mart, Inc., 503 F.2d 1161, 1165 n.4 (7th Cir. 1974) ("Even if it is necessary to review the contracts individually to eliminate business purchases, . . . such a task would be neither hereculean [sic], inhibiting, nor for that matter . . . unique.") (internal citations omitted).

Finally, any potential hardship in determining the class can be alleviated by Rule 23(c)(1)(C), which allows the court to alter or amend an order that grants class certification before final judgment.  "In addition, any disputes regarding whether a particular class member's debt is consumer or commercial can be remedied through proper drafting of the claim form, and at the damages phase of this case."  Macarz v. Transworld Sys., Inc., 193 F.R.D. 46, 57 (D. Conn. 2000).

As noted in Selburg, "[a]t bottom, a class action is the superior method to the fair and efficient adjudication of this controversy even if additional ministerial inquiries are necessary." 2012 WL 4514152, at *4.  "Should a debt collection company as large and as sophisticated as [Collecto] be able to avoid class action liability by mere fact of inadequate record-keeping, the Congressional purpose behind the statute would indeed be thwarted."  Marcarz, 193 F.R.D. at 57; see Wise v. Cavalry Portfolio Servs., LLC, No. 3:09-CV-86, 2010 WL 3724249, at *6 (D. Conn. Sept. 15, 2010).

Therefore, whether considered as part of the ascertainability and numerosity inquiries, or whether viewed as part of the elements of commonality, typicality, and superiority, the Court does not find that under the circumstances of this case, individualized inquiries into each class member's debt precludes class certification.  Accordingly, the objection as to that portion of

Judge Tomlinson's Report with regard to the threshold requirement of a consumer debt is rejected.

### 3.   As to Whether the Report Erred with Regard to Individualized Defenses

The Defendant also claims that the Report overlooks the class certification problem created by a unique defense applicable to the Plaintiff.

The Defendant emphasizes that for the Plaintiff to recover for allegations that a debt referenced in a collection letter is not valid, she is required to follow a certain procedure set forth in the FDCPA.  Specifically, a consumer may not institute an immediate lawsuit alleging that the letter violates the FDCPA.  Instead, a party is required to utilize the specific statutory debt dispute and validation procedure set forth in the FDCPA, 15 U.S.C. § 1692(g), before commencing an action in court based on the claim that the debt in question is not owed. Through this procedure, a consumer must contact the collector to contest the debt before the final collection attempt.

The Defendant argued before Judge Tomlinson that Butto is subject to the individualized defense of failing to first comply with this debt dispute procedure before commencing an action in federal court.  If this defense is meritorious, then the Plaintiff would arguably be unable to recover under the FDCPA.  Thus, the Defendant argues that because Butto failed to follow this debt validation procedure, Judge Tomlinson did not adequately analyze whether this unique defense might apply.

However, the Report found that while Butto did not first attempt to dispute the debt with Collecto, she is not mandated to do so under the relevant precedent of <u>Bleich v. Revenue Maximization Group, Inc.</u>, 233 F. Supp. 2d 496 (E.D.N.Y. 2002) because she is not contending that the debt referenced in the collection letter was not valid, either because it was inaccurate or

already paid.  To the contrary, the Report found that Butto is attacking the Defendant's alleged practice of charging unearned fees and violating the FDCPA when the collection fee the Defendant told her was owed had in fact not been incurred.  In other words, the Report essentially found that there was no unique defense as to Butto.

To the extent that Judge Tomlinson suggested that this individual defense as to Butto would not be successful, the Court declines to adopt that precise finding.  The Court recognizes that a valid argument could be made as to the merits of that defense.  In particular, if one characterizes the tacked on collection fee as part of the "debt"—even though not the original debt—it may be said that the Plaintiff is disputing the accuracy of the debt as a whole.  Nevertheless, the Court will not resolve at this early stage of the litigation whether, as a matter of law, the Plaintiff Butto was required to comply with the debt dispute procedures outlined in the FDCPA.  As the Plaintiff points out in her opposition, the merits of the purported unique defense are not necessarily relevant at the certification stage.

What is relevant and what ultimately drives this analysis is that even if this defense is presumed valid, the existence of such an individualized defense would not preclude class certification.  This is because Collecto has not explained how this potential defense would threaten to become the focus of the litigation.  As Judge Tomlinson explained in her Report, the existence of defenses unique to the named plaintiff may preclude class certification only if the unique defenses "threaten to become the focus of the litigation."  Gary Plastic Packaging v. Merill Lynch, 903 F.2d 176, 180 (2d Cir. 1990); see also Lapin v. Goldman Sachs & Co., 254 F.R.D. 168, 180 (S.D.N.Y. 2008) ("Second, even if GS had shown the presence of a meritorious unique defense as to Plaintiff, the Court finds that the litigation of this potential defense will not 'threaten to become the focus of the litigation,' . . .  because it does not go to the heart of

17

Plaintiff's case and will not require considerable time and effort to rebut."); <u>In re Ashanti</u>

<u>Goldfields Sec. Litig.</u>, No. 00 Civ. 0717(DGT), 2004 WL 626810, at *13 (E.D.N.Y. Mar. 30,

2004) ("[E]ven in cases where a unique defense might exist, a plaintiff subject to a unique

defense is not an appropriate class representative only if that unique defense might draw the

focus of the litigation away from common legal or factual issues.") (citations and internal

quotation marks omitted); <u>In re Indep. Energy Holdings</u>, 210 F.R.D. at 481 ("While the extent of

non-reliance on [plaintiffs'] part will certainly be a fact question to be decided at trial, it is

unlikely to significantly shift the focus of the litigation to the detriment of the absent class

members.").

 Here, Collecto largely focuses on why Butto would be subject to this particular defense.

In this regard, the Defendant merely asserts that Butto should not be permitted to represent a

class of individuals who actually meet the prerequisites to an FDCPA claim.  However, the Court

finds that this unique defense does not overshadow the common issues that dominate this class

action proceeding.

 For this reason, the Court rejects the Defendant's objection that this potential defense

should preclude class certification.

### 4. As to Whether the Report Erred with Regard to Adequacy of the Class Representative and the Proposed Class Counsel

 As another basis for its objections, the Defendant argues that the conclusion in the Report

that the Plaintiff met her burden of establishing her own adequacy and that of the proposed class

counsel is incorrect.

 Rule 23(a)(4) requires a plaintiff to establish both the ability of the named plaintiff to

fairly and adequately protect the interests of the class and the adequacy of counsel retained to

represent the class.  Here, the Defendant attacks both elements, asserting that Butto's deposition

testimony reveals her lack of knowledge concerning her own claims in this action.  Also, it argues that her testimony indicates that she had abdicated control of the litigation to her attorneys, who did not inform her of a settlement offer that had been made.  In this regard, the Defendant contends that the Report misinterprets the Plaintiff's deposition testimony as to these matters.

In the Court's view, the Report reasonably construed the Plaintiff's deposition testimony in finding that the Plaintiff was an adequate representative and that class counsel was qualified, experienced, and able to conduct the litigation.  Also, the Court notes that the Defendant does not assert a conflict of interest between Butto and the other potential class members, which is the relevant inquiry.

Instead, the Defendant contends only that the Plaintiff has not met her burden to demonstrate her familiarity with the action; her participation in decision-making in the case; her ability or willingness to bear the costs of the action; or her understanding of the comparative merits of class and individual actions.  As to these matters, the Court agrees with Judge Tomlinson that while the deposition testimony may raise some questions as to the comprehensiveness of Butto's knowledge, this testimony does not warrant denial of class certification.  Indeed, the Court agrees with the Plaintiff's response, including that as an unsophisticated customer, she should not be charged with applying the damages calculation in order to comprehend what a potential class recovery might be.  Again, the Court notes that the Defendant has not identified any antagonism between the Plaintiff's claims and those of the proposed class that would interfere with her ability to act as class representative.  While the Defendant again relies upon the possibility of a unique defense applicable to Butto, the Court has

already found that this would not prevent class certification, which is in accordance with the findings made by Judge Tomlinson in her Report.

With regard to the adequacy of class counsel, the Court agrees with the Report's analysis of the relevant factors, including counsel's experience in handling class actions; counsel's knowledge of the applicable law; and the resources counsel will commit to representing the class.  As for the issue raised by the Defendant of whether class counsel informed the Plaintiff of any settlement proposals, Butto's testimony is somewhat ambiguous.  However, reviewing Butto's testimony in its entirety, the court does not find that class counsel has abdicated his duty under the Rules of Professional Conduct to inform his client of any settlement proposals, or otherwise engaged in any other unethical conduct.  Therefore, the Court does not find that class counsel is inadequate on this basis.

In sum, the Court dismisses the Defendant's objections that the Report contains errors as to the requirements of adequacy of representation pursuant to Rule 23(a)(4).

### 5.  As to Whether the Report's Rule 23(b)(3) Analysis is Lacking

Finally, the Defendant asserts that the Report's analysis under Rule 23(b)(3)—in particular, whether a class action is superior to other available methods to resolve the current controversy and whether common issues predominate—was entirely insufficient.  As to predominance, it contends that the Report found conclusorily that "the issues regarding the substantially same collection letters sent by Defendant predominate over any issues that are subject to individualized proof," (Report & Recommendation at 22).  Also, the Defendant contends that the Report overlooked the existence of individualized issues, namely the need to determine whether the accounts of the proposed class members involve "consumer" debt and whether the proposed class members utilized the debt validation procedures.  With regard to

superiority, the Defendant argues that the Report does not discuss the factors relevant in determining whether a class action is "superior" to other methods for adjudicating the controversy, such as the class members' interests in individually controlling the prosecution or defense of separate actions and the likely difficulties in managing a class action.

In reviewing the Report, it is apparent to the Court that the portion devoted to the Rule 23(b)(3) analysis was brief only because the Defendant merely repeated the same arguments it had asserted on the issues of commonality and typicality, such as the potential differences in the collection letters sent by the Defendant and other potential individualized issues.  In the Court's view, it was unnecessary for Judge Tomlinson to repeat her earlier findings in connection with these arguments, as they had already been explored at length.  Thus, her findings as to predominance and superiority were not conclusory and were firmly supported by the well-stated reasoning throughout the Report.

Further, although the Report did not expressly analyze the relevant factors for superiority, it does not appear that the Defendant raised any arguments before Judge Tomlinson as to many of these factors.  In any event, the Court concurs with and adopts her conclusion as to superiority.  The Court firmly agrees that a class action here is the superior method for the fair and efficient adjudication of this case.  The Defendant now asserts that potential class members may stand to recover more in individual actions than in a class action, rendering the class action an inferior action from the perspective of potential class members.  This argument is rejected by the Court.  Under Rule 23(c)(2)(A), members of class actions maintained under Rule 23(b)(3) who determine that their interests are better served by an individual action, and provide timely notice of this election to the Court, will be excluded from the class through an "opt out" provision.  This would ensure that individual interests are respected.  Moreover, the possibility

that a putative class member may be entitled to a greater recovery if they pursue claims on their own arises in every class action. That vague possibility is not a ground for denying class certification. In this regard, the Court finds that challenging the content of a standard form letter is the type of suit that is more efficiently brought as a class action than as a series of individual actions, with the inefficiency, high costs, and the risk of inconsistent outcomes posed by that method.

As for any other considerations not expressly considered in the Report, the parties did not brief any arguments surrounding those factors beyond what has already been discussed in this decision. The Court finds that all the relevant conditions with regard to a valid proper class action are met. The interest of litigants in raising separate actions is preserved by the opt-out procedures; there is no evidence of any related existing litigation; this forum is ideal since one of the Plaintiff's claims is based on New York State law, namely New York General Business Law § 349; and no particular difficulty in managing the class action has been identified beyond the concerns raised by the Defendant that have already been discussed.

Therefore, despite the relative brevity of the Report's section on the Rule 23(b)(3) analysis, the Court agrees with the ultimate finding and accordingly rejects the Defendant's objection that this precludes class certification.

### III.   CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Judge Tomlinson's Report and Recommendation is adopted in its entirety; and it is further

**ORDERED** that the Plaintiff's motion for class certification is granted in part and denied in part, as set forth in this Decision and Order.

**SO ORDERED.**

Dated: Central Islip, New York
March 29, 2013

_____/s/ Arthur D. Spatt_____
ARTHUR D. SPATT
United States District Judge